Good morning, Your Honors. May it please the Court, Cara DeVito for appellant Adam Delgadillo. Your Honors, I want to emphasize to the Court today the question is not whether the record shows Mr. Delgadillo was competent to stand trial. The question is whether the record shows there's a reasonable doubt or a bona fide doubt that he was competent to stand trial. And as the briefing demonstrates, at least three factors in the record establish that quite clearly. The suicide attempt, the fact that the trial court was told by the bailiff that a week before the suicide attempt, people housing Mr. Delgadillo in the jail knew that he was suicidal, and then the evaluating physician's decision to commit him to an involuntary 72-hour hold. It all sounds like one reason to me. That sounds like one reason to you? Yeah, I mean, you know, he had a suicide attempt. I mean, when something like that happens, it's not unusual to react by putting someone under observation or a 72-hour hold or something, you know, to determine whether or not. But it grew out of that one incident. And people do occasionally attempt to commit suicide behind bars. I mean, you're really suggesting some automatic rule that whenever somebody does that, the court has an obligation to do a mental health determination. That's a little broad. Your Honor, in this case, it wasn't just the suicide attempt in court. It was the fact that jail personnel had known for a week before the suicide attempt that he was suicidal. But this particular suicide attempt left no doubt. But it all relates to suicide. I mean, you know, it is the stuff leading up to the suicide, the subject of the suicide. It's all connected to his being suicidal. Being suicidal is not – I mean, unless we say that being suicidal is necessarily a cause of mental illness. I mean, it's people who sometimes feel suicidal for perfectly valid reasons. I mean, let's say they are terminally ill. I mean, there are lots of reasons people might feel in pain. They may have – may not be mental illness. Is there anything unconnected to the suicide? Is there any other data point? Well, but, Your Honor, you're talking about situations that are not in the record. Mr. Delgadillo was not in pain. He wasn't suffering from terminal illness. And we're going to start branching out into areas that aren't. But we don't know. We really don't know. What you're saying is if it was suicide, you have to go find out, gee, did he do it for a good reason or a bad reason? It gets the court involved. What you're saying is as soon as you have a suicide attempt, the court has to get involved and investigate whether or not, you know, what caused it, what brought it about, did it make sense, is it connected to mental illness? No, Your Honor. I'm actually not asking the court to go that far. What I'm saying is there should have been some finding on the record of his competence to proceed to trial and not necessarily – Correspond to by the court. Absolutely, Your Honor. Isn't that implicit in the fact that the case went on? But, Your Honor – And defense counsel never raised it. The guy seemed fine the rest of the trial. We have ineffective assistance by trial counsel. We have incredibly callous trial of judge. The judge said – he actually said to the bailiff, don't touch the razor. You may want to use that as evidence of his consciousness of guilt. He was less concerned with the fact that this man was potentially suicidal than with preserving evidence to convict him of murder. That's at pages – excerpt of records four through seven, the colloquy between the trial judge and the bailiff. Is ineffective assistance raised by this appeal? No. No, Your Honor. Getting back to what we have, we have a guy who makes a suicidal gesture, whether it was a real suicide or not is up in the air. But anyway, he makes this gesture. He's examined for 72 hours by doctors. He comes back after the visit. Defense counsel doesn't say, my guy's nuts. We need to examine him. The judge sees, doesn't say anything remarkable. The trial goes on without any further incident. I forgot to – did he testify at the trial? No, he did not. That came out with respect to the Moran issue in the case, that his statement to police was essentially his testimony. And even as we're standing here now, you don't say that he was incompetent. I'm sorry. And even as we sit here today, you don't claim that he was incompetent. In fact, Your Honor, I believe he probably was, based on what I said earlier. I thought you started off by saying you don't make a claim that he was incompetent. No, no. I said on review, the standard is not whether or not he was competent to stand trial. The standard is whether or not there was reasonable doubt to believe he might not have been competent. Has he alleged anywhere that he was not competent? He thought he was the Pope or he thought that he couldn't communicate with his lawyer  Yes, Your Honor. And I cannot remember which one of his pleadings, whether it was the First Amendment Petition or in his Traverse, he said he was mentally ill at the time he gave his statement to police throughout the entire trial, sentencing, and post-conviction incarceration. Mentally ill and incompetent are not the same thing. No, they're not. But the mental illness itself suggests there may have been incompetence at trial. I think the most – Does he say anywhere – no, I guess I'm not answering my question right. Does he say anywhere, I couldn't communicate with my lawyer or I thought the judge was, you know, the weatherman on TV or anything like that? Your Honor, if we can assume for a moment that Mr. Delgadillo is mentally ill, because the medical records that are available to us show that from three to six weeks after he was convicted at trial, three to six weeks after April 13th, he was finally diagnosed with psychosis and dementia and was hallucinatory and had to be severely medicated, assuming that is true and is still true in prison as far as I know. He's being represented in his pro se pleadings by fellow inmates who are helping him, and no, they haven't said the magic words that he was not able to communicate with his lawyer, but sub silentio, that can be inferred from that record. Okay. In addition, Your Honor, I probably wouldn't be arguing this issue to you today if after that 72-hour hold had expired, the trial judge said one simple statement on the record which is that I find him competent to proceed, or the medical records from Twin Tower Psychiatric Facility indicate he's competent to proceed. But the judge did not make that express finding. And I submit to the Court that under the EAPA standard of review, the State court's silence on the issue, which leads to an implied finding of competence, is per se unreasonable. I believe the State judge said that. You've read the order. I'm sorry? You've read the order. I read the order? The Odle case. Yes. Odle v. Woodford? Mm-hmm. It's a pretty steep standard to require a trial judge who is sponsored to interfere with the conduct of defense by interjecting a competency determination when it's not asked of a defense counsel. There was quite a bit more in Odle, if you recall. I mean, that's a guy who had trauma and had a piece of his brain missing and did all sorts of really bizarre stuff. It's a pretty steep standard. And can we really say that the State courts here were completely off the track by saying that the steep standard was not satisfying? And I have a hard time figuring out, once we say that, how we treat every case where there's an attempted suicide somewhere along the way, either in prison or out of prison or sometimes in the past or at some point in the childhood or anything like that, where that doesn't immediately trigger a requirement for a competency hearing. Your Honor, if this was a completely ineffectual suicide attempt or an act of flingering, I'm not familiar enough with the Lanterman-Peters Short Act, which is, I believe, the name of the act that allows for the involuntary committal of mentally ill persons. But I suspect the emergency room physician at County General would not have committed him if that doctor didn't suspect there was something more going on than really trying to get out of trial that day. But nothing came of it. I mean, the 72-hour hold is usually for observation and to give – essentially to stabilize the person, to avoid the possibility of further damage to themselves or to other people, and to then go in for a 14-day commitment or longer-term commitment. The 72-hour hold is basically like a TRO. Okay. And what is the judge to infer if nothing comes of it? You get a 72-hour hold. My – my suspicion would be, although of course I don't know, is that anybody who does make a suicide attempt could probably be subjected to a 72-hour hold. All it takes is a doctor, I think two doctors. Well? You know more than I, Your Honor, because this isn't in the record. And one of the reasons – Well, it's a matter of State law. I'm not familiar with that. You need a doctor backed up by a second doctor to approve, and that's it. And that's a hold. You don't go to court. I mean, there's no – there's not, I have to say, a hearing or anything of that sort. On that showing, a hold is placed. And, you know, it makes sense. You avoid for 72 hours, which is a relatively short period, you incapacitate the person, you keep them under supervision, you keep them under observation, make sure no damage is done to them, to the, you know, person or to somebody else, while there's – and during which time there is time for the legal process to work, to go to court and get more – either more evidence by observation or get further relief from the court for further detention, or both. That's how it works. So nothing, you know, they put a 72-hour hold, nothing comes of it. Your Honor, you're assuming that nothing comes of it because the trial judge did nothing. But a critical issue in this case is that – Is there anything in the record that suggests that the hold was continued? No. And the district court didn't order the Respondent to lodge the records. It had failed to lodge in response to an earlier order. I thought they said they gave them everything they had. They gave them everything they had. They didn't try hard enough to get the missing records from that crucial 3-day period. Well, why didn't you go to the place and get them? Your Honor, I don't do that on appeal. I don't believe this Court would accept that. It's improper to provide the Court with documents. I mean, there is – maybe – I meant at the district court. I mean, they're as available to you as they are to anybody else. I beg your pardon, Your Honor. Who's pro se in the district court? Well, they're as available to him as they are to anybody else. They're medical records. He was mentally ill. He has a friend in jail doing his pleadings for him, Your Honor. Okay. I guess maybe I don't understand exactly what happened. He asked for records. Yes, he did. The State says here's everything we have. Now, if he's not happy with everything they have, then he can go, whether he's represented or not represented, he can go and try to find whatever else he thinks there is. What else can they do? Well, he – through his jailhouse lawyer, he protested to the district court that the Respondent's State had not provided everything that was necessary to a fully informed understanding of this issue. Maybe he's wrong about that. He said – the State says we've given them everything we have. Your Honor, the State didn't have it in the first place. The State made a single phone call and wrote a single letter to Mule Creek State Prison, to the prison records office, where typically a prisoner's medical file would follow him. And the State said, please, can we have copies of what you have? And the records clerk said, sure, here's the records of what we have. What Mule Creek State Prison had were copies of all of his medical records from the day he was convicted. They had no medical records predating trial, including this three-day period of time. So he wants the records from the county jail? From the Twin Towers Psychiatric Observation Facility, exactly. I ask again, why aren't they as available to him as they are to any other person who wants to subpoena records? Your Honor, I don't – I personally don't know how easy it is for an incarcerated inmate to subpoena records from a psychiatric facility, even when they're his own personal medical records. But in this case, the district court ordered the State to lodge them. The State made a half-hearted attempt to do so. Mr. Delgadillo's jailhouse lawyer said to the district court, wait, we're still missing some things. I beg your pardon. And the court went ahead and ruled anyway. On a bare record, the court – the district court went ahead and ruled and said, well, no, there was no error by the trial judge, even though the district court didn't know exactly what those medical records said about his competency, about whether some physician was recommending there be a further 14-day observation. We don't know whether somebody was recommending that or not. Those records are not available. I'm sorry. Is this part of this appeal, an abuse of discretion by the district court in failure to allow discovery? No, Your Honor. I'm – The specific question I – If – I mean, if that's part of the appeal, then we can consider it. But I didn't see it in the brief, so I'm – I often miss things, so maybe it was there. No, you didn't miss it, Your Honor. It may be the way that I interpret what I'm asked to brief in a certificate of appealability. But what I did suggest in the briefs is that we may have – this Court may have to remand this case to the district court for further development of the record in accord with Laws v. Lamarck. Let me just make sure I understand. This woman asked why wasn't this material obtained in the district court or why wasn't this obtained by your client. You went there. Wasn't this material available? And what you answered was he pointed this out to the district court that all that the state had provided were records following conviction. So whatever records were available prior to the point of conviction were not available and – I'm sorry, were not provided. Those records were somewhere else, and the district court did not wait for these records, either or the state produced them or wait for your client to get the records on his own. It's what I think I heard you say, and that's like a 56-D. I mean, I don't know if it was summary judgment, but we have a chance to respond to summary judgment by saying I need more discovery. It sounds to me like that kind of procedure. And if the district judge fails to allow discovery when it should in those circumstances, that could be an abuse of discretion. But you said this wasn't covered by the CLA. No, but – So you didn't wait. Your Honor, I may not have fully explained to the Court the underlying procedure  On behalf of Mr. Delgadillo, his in-house jailhouse lawyer filed a number of motions for them, and one of them was a request for the appointment of counsel to conduct this necessary discovery for him. The district court issued a written order that granted and denied a number of these motions. At excerpts of record page 202, the Court denies the motion for an attorney to conduct discovery. Later at the bottom paragraph of that same page, continuing to the next page, the Court says instead what I'll do is order the Respondent State to get these records and give them to you. The State got the limited number of records we've discussed, and Mr. Delgadillo's jailhouse lawyer mentioned to the district court some critical records were still missing, and so excerpts of record pages 240 to 241, the State was ordered to get those records, the missing ones, and lodge them in the district court. They never did, and the district court went ahead and ruled anyway. So Judge Silverman, in response to your question, why was the client not able to get these records for himself, he made an attempt to, apparently was unable to, and asked for the assistance of counsel at trial, and the district court apparently exercised its discretion and said we don't need to appoint counsel, we'll have the State do it for you. And he was relying on the State to do just that. Kennedy. Let me just make sure I understand. So it is your position that the State did not and still has not fully complied with the district court's order to produce records under its control? That's right. I'm not trying to put words in your mouth. I'm really just trying to understand your position. That district court says you produce anything you have, and in your view, anything you have includes records by the prison, it also includes records by other facilities under the control of the State, which would be – I don't know what Twin Towers is. Twin Towers? It's where the State prisoners are held. Sounds like a TV show. I know. But it's what? It's the prison here in downtown Los Angeles where prisoners are held. So that's a county jail? Yeah. And that would be under the jurisdiction of the sheriff? Yes, exactly. And the sheriff is an agent of the State? Yes. You say yes, but it's a tough question. Actually, the sheriff would be an agent of the county. But that's still part of the government. Okay. Okay. I think you've got a minute and 32 seconds left. Reserve that if you please. Thank you. Does the Court have any questions? Thank you. May it please the Court. David Glassman for the Respondent of the Appellee. On March the 23rd of 1998, the Petitioner in this case cut his wrist. That's what the record indicates. That is the way the trial court characterized it. That is the way sheriff's personnel characterized it. So I would point out at the outset, and I'm not trying to split hairs here, but there was no description that I've seen in the record that this was, in fact, a suicide attempt. This was an act of wounding, certainly. But to say it was a suicide attempt, I think, connotes a certain element of psychology that the incident itself doesn't necessarily allow. Nevertheless — Well, what else? What, do you think he was shaving or something? He had hair in his wrist? Maybe he wanted a continuance. Well, I think it may have indicated any number of things, Judge Kaczynski. It may have indicated that the defendant didn't want to disrupt the proceedings because the sheriff's personnel point out to the Court that the defendant has previously repeatedly attempted to escape and that he has previously harmed himself. They did not tell the judge, as was described here and in the briefs, that he is suicidal. At least I don't see that in their description. And the judge — and again, I'm not minimizing that it was a serious incident. And obviously, as the Court knows, he was immediately referred for an evaluation. But the judge points out, not the Petitioner's lawyer, the judge who was described by this Petitioner in his briefs and here today as completely insensitive to this issue, the judge points out, and this is in excerpts at page 11, while I can envision a situation where you, meaning defense counsel, may declare a doubt as to your client's competency. However, it may be that if at the conclusion of the 72-hour hold the attending physician determines that he is, and he's interrupted, competent, the judge continues he is competent or at least not a danger to himself, then you may not be doing that. And in fact, as the Court knows, there was no recommendation by a physician or anyone else indicating that as a result of that evaluation that the Petitioner was mentally incompetent. Proceedings resume. Defense counsel never at any point — further proceedings for civil detention don't hinge on competency. They hinge on danger, danger to the subject and danger to the community. One could be mentally incompetent and yet deemed not to be dangerous. So you're a vegetable. You're, you know, really depressed, so you're in a sort of highly passive state. You would not be — very likely you would not be capable of being committed. And yet you may be incompetent. Your Honor — You may be incompetent to participate in legal proceedings. I'm not sure what — Well, as to your point, Your Excellency, I would say that, for example, even a bona fide suicide attempt, which is the way I describe it alternatively in my brief, even a bona fide suicide attempt may indicate extreme consciousness. But be that as it may, the point that you're raising is exactly the point that was addressed in a case cited in my brief and cited by the district court, a case called Contreras v. Rice. If I can just read the relevant statement by the Court, and that is a case in which the same argument is raised, namely the referral for the evaluation following what is described there as a suicide attempt constitutes substantial evidence of incompetence. And the — this is a district court case at 5F Sup. But the court there specifically differentiates the evaluation that is conducted by a medical person or as a medical professional pursuant to one of those psychiatric examinations and differentiates that from the legal standard, which is, has there been substantial evidence presented to the trial court indicating that the defendant either does not understand the nature of the proceedings or is unable to assist his lawyer? Now, the court asks Petitioner's counsel whether or not the claim is raised in this case that, in fact, the Petitioner was incompetent. And at footnote 6 of the district court's order, the district court points out that there is no such claim made in this case. That is not his claim. His claim is that the act of wrist slashing or wrist cutting constituted substantial evidence of incompetence. Turning to the issue of these records — I'm sorry. I don't understand the difference. Well, Your Honor — If it constituted substantial evidence of incompetence, that would trigger the duty to inquire by the court the source of the duty, which were recognized, numerous cases were recognized, including oral, that such a duty existed. A judge in certain circumstances has enough indications of incompetence that he must on his own order a competency hearing. But those cases — It's a clearly established law. There's no doubt about that. But, Your Honor, those cases, as I understand them, make clear that it is a variety of factors that can demonstrate incompetence. And I have not — I have certainly not seen a case from the Supreme Court or from this Court that indicates that even an act — even a bona fide suicide attempt standing alone is necessarily an indication of mental incompetence. In terms of this issue of what was before the judge, I submit that is also important, because the Supreme Court and this Court have also been clear that the issue — So which judge? The Superior Court judge? Yes, Your Honor. The trial judge. So the State Superior — So you have a district court judge who's also a trial judge. I mean the trial judge in this case, Your Honor. It is the — There is a trial judge in this case, a district judge. So you're talking about the State court? I'm sorry. I'm talking about the State Superior Court judge that presided over these events and the only judge in the case that had the ability to observe the Petitioner precipiently. Only because the district court didn't have him brought in. Right. But the — Maybe should have. Well, only if there was substantial evidence presented in the State proceeding, and that standard is based upon evidence presented to that judge. So I want to make — It's a little bit tricky because there is a sua sponta duty on the part of the judge. So we are presupposing that whatever was going on with his counsel, his counsel didn't do his job, because by the time the trial judge's duty gets triggered, the defense lawyer should have known long ago that this was a case where he should have made a motion for competency hearing. So we're presupposing counsel failed somehow in his duty. So the fact that more was not presented, I'm not sure helps you much. It has to be the things the judge knew about and the things the judge reasonably could have found out about on inquiry. Except, Your Honor, that cases that focus on the trial judge's duty often refer to the fact that defense counsel did or did not raise a doubt as to the defendant's competency. So the fact that no doubt was raised has been seen as an indication that the defense counsel, who ostensibly has greater dealings with his client than the court, does not find a basis. And in this case, when the trial court suggests that a competency hearing might be warranted, defense counsel is in opposition to that initially and indicates that the defendant may not be willing to waive his speedy trial right. So I think there is a role that defense counsel plays and that we – that his silence on the subject is not necessarily indicative of incompetence. And as the Court also has observed in this case, there is no claim here of incompetent defense counsel. But the reason that I was referring to the existence of this evidence is that the cases from the Supreme Court, Droke v. Missouri specifically, and cases from this Court, such as Amaya Ruiz v. Stewart, which are cited in my brief, indicate that the inquiry is confined to material that is before the trial, the State superior court trial judge in this instance. And these records that have been discussed, there is no dispute in this case. It is acknowledged that they – no such records, assuming they exist and there is no proof that they exist, no such records were ever – no additional records, excuse me, were presented to this judge. So – Well, as I understand it, the State was under an order to provide records. And let's assume there are records here in L.A. County with a sheriff. Would that have been covered by the State's duty to provide – to – under the district court's order? The – I – when you say would it have been covered, the district court ordered the State to obtain the records of his incarceration, and the State reported back to the district court that the prison, which typically maintains both jail and prison records in this case, no additional records were located if the Petitioner considered that – and I would point out that it was the Petitioner in pro se who was obtaining these records. He didn't get this with the benefit of counsel. He got them on his own. The fact that there are records here, most of which are irrelevant and many of which are incomprehensible because you can't read the medical personnel's writing, the fact that there are records here is due entirely to the Petitioner. You know, I'm still waiting for an answer to my question. Well, the answer is that all records were provided that were in the State's custody. Do you remember the question? Yes, Your Honor, and it was whether or not – If there are records of Petitioner's incarceration with the sheriff here in L.A. County, would those records have been covered by the district court's order? I'm not saying there were records. Yes. I'm saying if there were such records, would they have been covered and would the State have had an obligation to provide them? The answer to your question is that I'm not sure the State would have had an obligation to provide them because the State does not represent the sheriff. But nevertheless, the State in this case, certainly to the district court's satisfaction, attempted to obtain all records regarding the citizen. Well, if the district court orders the State to provide records of his incarceration, why wouldn't that cover records that happened to be held by a subsidiary of the State, the county? Well – Would not the State – I mean, I don't have the order here. I don't know exactly what it says, but it's been described to me. It sounds to me like the State had an obligation to go to wherever it needed to go within the State, including its subsidiary entities, and obtain these records. And I'm sort of wondering, you standing there on behalf of the Attorney General of California, do you take the position that when a district court orders records provided in the custody of the State, that that excludes records that are held by the various sheriffs, the people in the State who run jails in their 50 counties? I think it's useful to know whether that's the position taken by the State of California. Well, as the Court has indicated, the discovery issue, the denial of discovery, was not a basis of this appeal. So the best that I can answer for you is that, in my view, and this is – well, I'll do the best I can to answer your question. In my view, the State would not be necessarily required to obtain from every subsidiary government entity medical records, but that there was an attempt made in this case to obtain from the Petitioner's record, his prison custodian, all medical records that declarations were filed in that regard with the district court and the district court. No effort was made to obtain records from the sheriff of Los Angeles. Your Honor, I only – my only knowledge in this case comes from the appellate record, and I'm reading what was – what was filed in the district court. So whether, in fact, there were efforts made to deal with the sheriff directly, I can't advise the Court. I don't know what happened that is not reflected in the record. Do I understand correctly, Mr. Glassman, that when the inmate is transferred from the jail to the State prison, the medical records go from the county jail to the receiving prison? That is the protocol described in the declaration filed by the prison custodian that was submitted to the district court. And it's your position that when the request for records was made, whatever the prison had, including the stuff that came from the county jail, was turned over to – to him? That's correct. That is what the record reflects, and the Petitioner did not dispute that the State did not divulge or surrender all of the records that had been compiled regarding his incarceration.  But if the records, in fact, don't go back beyond the date of conviction, then that would cast doubt on whether or not, in fact, the records were included. Sometimes these things don't get transferred as one would expect them to be. Except that. The records don't – is that right? But let me just go back to the question. You said that you only know the appellate record. Yes. You're saying the appellate record, everything passed the district court. Appellate record – not appellate record in the State court, appellate record in our court. Your office, you didn't handle the case in the district court here. My office did. I did not. But this issue was – Okay. So then the question of how one responds to a district court's order in this case can't really be limited to the record on appeal. You can't say, gee, some other lawyer in my office worked on this. My question to you was you guys, you, your office – Yes. Okay. Your law firm got an order from the district court, from our district court here. Yes. Okay. And the district judge ordered you to do certain things. I don't find it entirely satisfactory for me for you to stand there and say, I don't know because I'm just a lawyer on appeal, and I can't tell you how we interpreted this order and whether or not we made requests of the county or whether or not we made – we felt we had an obligation to ask subsidiary entities. This is not State court record stuff where, you know, it was handled by the DA or somebody else. It was your office, somebody who works down the hall from you. Yes, Your Honor. So I don't think it's an unfair question to ask you when you got this order from the district court. Well – I mean, maybe you don't know off the top of your head, and that's a different answer, but it's not a question of just being limited to the questions to the record on appeal. I'm not abdicating my responsibility merely because I didn't handle the case in the district court. I'm simply saying that I don't know specifically what efforts were made unless I find them in the file. And the file indicates that, and the declaration submitted at the district court indicate that the prison maintains both jail and prison records and that all such records that were in existence for this petitioner were provided to him. The point that I would like to end with, because I do think it is an important point, however, is that the – as I indicated, under drop and under cases from this circuit, the issue is what evidence was presented to the trial judge and that the existence of what are at this point largely hypothetical records. Well, he was put on a 72-hour hold. A 72-hour hold has a purpose, and the purpose is to determine whether or not he needs to be held further because he might be a continued danger to himself, a continued danger to others. However, there is a further determination made at the 72-hour hold either to let the hold expire or to continue it. This is something, it strikes me, that the State judge would have had notice of. It is not enclosed under the proceedings. You put him there for 72 hours and nothing happens. It is there for a purpose. The only reason you grant a 72-hour hold is so you would make further determinations, either medical or legal. And so it's not clear to me that that's outside of what the district – what the Superior Court, rather, could have known or should have known, might have known, if given the notice he had about the proceedings that were started. It's at least of some interest to me as to what came of those proceedings. I mean, after 72 hours, what happened? Well, we do know from the record excerpt at 11 that the court is mindful that this – the referral may result in a competency inquiry. And we also know that the defendant, the Petitioner, is returned to the trial court and that his counsel does not raise the issue again. So I think in context, it is fair to interpret the record as indicating that there was no basis that no one concluded, and there certainly is not apparently a record of anyone concluding that there was, as the Court has indicated, the legal issue of competency was present in this case, and that he was, as the record indicates, he was bandaged, he was held, and he was returned to the courtroom. I see that my time is almost up. If there are no other questions, I will submit. Thank you. Judge Kaczynski, you had said you don't have the State trial court's order in front of – I beg your pardon, the district court's order in front of you regarding the medical records. They are in the excerpts of records. Yes. Tell me where. There were two orders. All right. There are two volumes of excerpts I have. The first order is at page 203-204, but that's the multipage order that both denies the request for the appointment of counsel and also grants the request for medical records and orders the Respondent to obtain them and provide them to Mr. Delgadillo. The first order says provide them to Mr. Delgadillo. It would be at the first page. The 203 is not the beginning of a page for me. It is the middle of – it's the middle of an order, yes? Right. It would be at the bottom. It's the one that starts on page 201. The order begins on page 201, but I believe the exact language we're looking for is at the bottom of page 203 to the beginning. It's paragraph 6. Okay. It's paragraph 6 that continues from the bottom. I'm not looking at the excerpts, Your Honor. I'm just looking at the site. Oh, okay. Fair enough. The bottom of page 203 to the beginning of page 204 is the first order. Okay. After the Respondent provided Mr. Delgadillo some records and Mr. Delgadillo's attorney in prison noticed that the critical medical records were still missing, they objected and the district court issued a second order. That appears at excerpts of record pages 240 to 241. If I may read it to the Court, the critical paragraph says, In light of Petitioner's allegation of noncompliance, Respondent is directed to either provide Petitioner with copies of his medical records for the period during which Petitioner was incarcerated prior to and during his trial, in particular medical records reflecting Petitioner's condition prior to April 14th, 1998, within seven days of the date of the disorder, or file and serve a declaration explaining that all medical records for the relevant period already have been provided to Petitioner. I believe what the State has been arguing is that the declaration that was filed here sufficed. A declaration was filed on August 14th by some member of the Attorney General's office saying, I made a phone call and I wrote a letter to Mill Creek State Prison and they provided me with everything they had and I've provided everything I have to the district court. And is that letter in the excerpts? Yes. That's in the excerpts also, Your Honor. Do you remember where? Pages 242 to 249 is the August 14th, 2002 response by the State that includes declarations from the Deputy Attorney General who had been ordered to provide the records and also from the file clerk at Mill Creek State Prison. Is there any, Mr. Glassman makes the point and so does Judge Matz, I believe it is, I didn't know it was Magistrate Judge Lister, that what really matters is what the State trial judge had, whether he saw these records or not. Is there anything in the record to indicate that the trial judge saw these 72-hour medical records? No, Your Honor. There's absolutely nothing. When trial resumes on Friday the 27th of March, trial just begins. I'm not going to mention whatever it is. Well, the same order that you were reading from on 241, it says Petitioner is notified that only those records that were before the trial court are relevant. No, Your Honor. I'm sorry. I think you're misreading that. There was. Petitioner is notified that only those medical records that were before the trial court on or before sentencing are relevant to his claim that the trial court should have provided him with a hearing. Maybe I was misunderstanding then because there's also a comment in the report and recommendations that says, I'm trying to find it now. Excerpts of record pages 264 to 265 is quoting from the report and recommendations. And the magistrate mentions the medical records Mr. Delgadillo was able to provide the district court were irrelevant because they postdated his trial. I'm not sure you're zeroing in on the language that I'm talking about, but the broader point is this. What difference does it make what those records say if the judge didn't see them? I mean, the records could show that he thought he was Barney Fife and he's living in Mayberry. You know, what difference does it make? He's a raving lunatic. If the trial judge didn't see it, what difference does it make and how does it bear on whether the judge should have granted a competency hearing? The trial judge was hugely abusing his discretion if he allowed this trial to proceed without reading those records. What makes you think those records even go to him? I mean, I don't know the California procedure. In Arizona, we have a very similar procedure. If someone engages in what might be a suicidal act, they study for 72 hours whether he poses a danger to self or others. And if he does, then they go ahead with a civil commitment proceeding through a separate channel. If he doesn't, then that's the end of the game and he's released from the 72-hour hold. The trial judge has nothing to do with it. It just happened, this event happened to have occurred in a courtroom. It could have happened on the street. It could have happened at the Costco. It could have happened anywhere. I mean, what makes you think it goes to the trial judge? It may not, Your Honor. And in that case, I suspect that's the case. Well, then he's got a lawyer there to represent him, to say, judge, the guy's crazy. The guy, he's not crazy. He does. But the California Penal Code provides a fail-safe method if trial counsel fails to declare a doubt when he should. The fail-safe method is the trial judge can suspend to declare a doubt. We've already established you don't have an ineffective assistance at counsel claim in the case. No, I'm not arguing that. And you don't claim that he was, in fact, incompetent. I don't believe that's the standard on review. But that's not my question. You don't say his lawyer fouled up and you don't say the guy really didn't understand what was going on. Am I right? You're right. But one more thing, Your Honor. I had pointed out to the Court three factors I said should have indicated to the trial judge that there was a reasonable doubt he was competent to continue. One other fact, Excerpts of Record 4, where this outburst in court begins, the very first thing that Mr. Delvedio says is, I didn't murder nobody, Your Honor. I'll give my life. I'll give my life. And apparently, at that point, he slashes his wrists. One prong of the competency test is can someone communicate effectively with their attorney. The other prong is, did they understand the nature of the proceedings? And I submit to the Court, by believing that he could prove his innocence by trying to commit suicide, Mr. Delvedio didn't understand the nature of the trial. Let me understand. Your claim is not that he was incompetent. Your claim is that we don't know whether he was, and the trial judge had the duty to inquire and establish his competency. He might have been. He might not have been. Yes. But the duty arose because of notice to the trial judge. Yes. So actual incompetence is not part of your claim. No. But if there is some kind of forensic examination of his competency, if that's what this Court decides to do with this case, it may come out that he was incompetent and that may affect other aspects of the case, whether he was capable of giving, for example, informed and knowledgeable consent when he made his Miranda statement. Okay. Thank you, Your Honors. Thank you very much. You can submit it. We'll next hear argument in. Gonzalez versus Ashcroft. Thank you.
judges: Kozinski, Silverman, Weiner